**VULCAN MATERIALS COMPANY**

v.

**GAMBLE CONSTRUCTION CO., INC., et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 24, 2001.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 2001.

F. Scott LeRoy and M. Andrew Pippenger, Chattanooga, TN, for appellant, Vulcan Materials Company.

Douglas M. Campbell, Chattanooga, TN, for appellee, Girls' Preparatory School.

## OPINION

SUSANO, J., delivered the opinion of the court, in which GODDARD, P.J., and SWINEY, J., joined.

In this action to enforce a materialman's lien, the trial court granted summary judgment to the owner of the property because the materialman delivered the notice of nonpayment to the owner by hand rather than by "registered or certified mail, return receipt requested" as required by T.C.A. § 66–11–145 (Supp.2000). We affirm.

### I.

The defendant, Girls' Preparatory School ("GPS"), is a not-for-profit charitable educational institution for girls. In the summer of 1999, GPS entered into a contract with the defendant Gamble Construc-

tion Company, Incorporated ("Gamble"), whereby Gamble agreed to refurbish and resurface GPS's tennis courts.[1] Gamble purchased asphalt and other materials for the project from the plaintiff, Vulcan Materials Company ("Vulcan"), a manufacturer and seller of materials for use in paving projects.

On or about October 29, 1999, Vulcan hand delivered a notice of nonpayment—claiming a debt of $28,024.32 for the sale of asphalt and concrete to Gamble for use in the tennis court project—to Helene Reisman, a GPS employee. Reisman acknowledged receipt of the notice by signing it on behalf of GPS. At no time did Vulcan serve the notice of nonpayment to GPS by way of registered or certified mail.

Vulcan filed suit against Gamble and GPS seeking, *inter alia,* to enforce a lien against the property of GPS. The trial court granted GPS summary judgment, specifically finding that "[Vulcan's] notice of nonpayment was hand delivered by a Vulcan employee to a GPS employee and not delivered by registered or certified mail-return receipt requested as required by T.C.A. § 66–11–145." Vulcan now appeals, arguing that the trial court erred in basing its grant of summary judgment to GPS on the fact that Vulcan delivered its notice of nonpayment by hand.

## II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993).

## III.

T.C.A. § 66–11–145(a) (Supp.2000) provides, as pertinent here, that a materialman

> shall mail, within ninety (90) days of the last day of the month within which work, services or materials were provided, a notice of nonpayment for such work, services or materials to the owner and contractor contracting with the owner if its account is, in fact, unpaid. The notice, *which shall be served by registered or certified mail, return receipt requested,* shall contain: . . . .

(Emphasis added). Subsection (c) provides that a "materialman who fails to provide the notice of nonpayment shall have no right to claim a lien under this chapter . . . ."

 Tennessee generally requires strict compliance with its lien statutes. *Eatherly Constr. Co. v. DeBoer Constr., Inc.,* 543 S.W.2d 333, 334 (Tenn.1976); *Smith v. Chris–More, Inc.,* 535 S.W.2d 863, 863 (Tenn.1976); *D.T. McCall & Sons v. Seagraves,* 796 S.W.2d 457, 460 (Tenn. Ct.App.1990); *Sequatchie Concrete Serv., Inc. v. Cutter Labs.,* 616 S.W.2d 162, 165 (Tenn.Ct.App.1980). *See also Don Wood Plumbing Co. v. Tri–Pi, Ltd.,* C/A No. 01A01–9304–CH–00162, 1993 WL 350114 at *1–*2 (Tenn.Ct.App. M.S., filed September 15, 1993), and the cases cited therein. Strict compliance is required because "[a] materialman's lien is altogether statutory, and, when the lawmaking body prescribes the terms upon which it may be asserted, it is beyond the power of [courts] to waive

---

1. Gamble is not a party to this appeal.

its provisions or substitute others." *McDonnell v. Amo,* 162 Tenn. 36, 34 S.W.2d 212, 213 (1931).

## · IV.

Vulcan argues on appeal that the trial court erred in dismissing its claim. It takes the position that the hand delivery of the notice of nonpayment does not offend the provisions of T.C.A. § 66–11–145(a).

A panel of the Western Section of this Court, sitting in Knoxville, recently addressed the precise question now before us. *Potter's Home Center, Inc. v. Tucker,* C/A No. 03A01–9710–CH–00467, 1998 WL 229423 (Tenn.Ct.App. W.S., filed May 1, 1998). In *Potter's,* a contractor,

> "purchased building materials and supplies from Potter's for use on property owned by the Viles.... [The contractor] subsequently did not pay for many of the items he purchased from Potter's for use on the Viles' property. Potter's, therefore, sought to establish a materialman's lien against the property by providing the statutorily required notice of nonpayment to the owners of the property, the Viles. Instead of serving the notice of nonpayment by registered or certified mail as required by statute, two of Potter's employees hand delivered the notice to Mr. Viles' office."

The trial court in *Potter's* granted summary judgment to the Viles on the ground that the lien was unenforceable because Potter's failed to comply with the statutory requirements relating to notice of nonpayment. *Id.* at *1. On appeal, this Court held "that the trial court properly dismissed Potter's action to enforce the lien because Potter's failed to strictly comply with the notice of nonpayment provisions

of the mechanics' and materialmen's lien statutes." *Id.* at *3.

GPS argues that *Potter's* is correctly decided, and seeks to have the instant case resolved in conformity with that decision. Vulcan, in contrast, argues that *Potter's* was incorrectly decided because hand delivery of the notice of nonpayment is more than substantial compliance, it is *super* compliance; because *Potter's* interpretation of T.C.A. § 66–11–145 is too strict, and defeats the statute's purpose; and because *Potter's* ignores well-settled maxims of statutory construction and leads to manifest injustice. We will address each of these arguments in turn.

## V.

### A.

Vulcan's first argument can be restated as follows: (1) the *Potter's* case was wrongly decided because it relies on *Don Wood Plumbing, supra;* (2) *Don Wood Plumbing* stands for the proposition that substantial compliance with the lien statutes is insufficient to establish an enforceable lien; (3) Vulcan's delivery of its notice of nonpayment by hand rather than registered or certified mail, return receipt requested, is not substantial compliance, but rather *super* compliance; and (4) such "super" compliance with the lien statute should be sufficient to establish an enforceable lien. Vulcan cites a Georgia case, *Grubb v. Woodglenn Properties, Inc.,* 220 Ga.App. 902, 470 S.E.2d 455 (1996), in support of its argument that "super" compliance should establish an enforceable lien.[2]

---

**2.** *Grubb* involved, in part, Ga.Code.Ann. § 44–14–361.1(a)(2) (Supp.2000), which provides, in pertinent part, that "the lien claimant shall send a copy of the claim of lien by registered or certified mail or statutory overnight delivery to the owner of the property or

the contractor, as the agent of the owner." The lien claimant in *Grubb* served a copy of the claim of lien along with the complaint rather than mailing it by registered or certified mail or statutory overnight delivery. *Grubb,* 470 S.E.2d at 458. The Georgia Court

We do not find this argument to be persuasive. In the words of the Tennessee Supreme Court, "[a] materialman's lien is altogether statutory, and, when the lawmaking body prescribes the terms upon which it may be asserted, *it is beyond the power of [courts] to waive its provisions or substitute others.*" *McDonnell,* 34 S.W.2d at 213 (emphasis added). We may not waive the requirement that the notice of nonpayment be served by registered or certified mail, return receipt requested, nor may we substitute for this provision a different requirement, regardless of its allegedly superior reliability. As an intermediate appellate court, it is not our prerogative to set policy or substitute our judgment for that of the legislative branch. *Cavender v. Hewitt,* 145 Tenn. 471, 239 S.W. 767, 768 (1922).

## B.

Vulcan next argues that *Potter's* construes the lien statute too strictly, thereby defeating the statute's purpose.

The purpose of T.C.A. § 66–11–145 is to provide owners and general contractors with sufficient notice that a subcontractor has not been paid. *CMT, Inc. v. West End Church of Christ,* C/A No. 03A01–9511–CH–00383, 1996 WL 64003 (Tenn.Ct.App. E.S., filed February 15, 1996). Vulcan cites three published cases in support of its argument that the statute is not to be construed so strictly as to defeat this purpose. *See D.T. McCall & Sons,* 796 S.W.2d at 460 ("However, any construction adopted by the courts should not be so strict that it defeats the statutes' purpose."); *Southern Blow Pipe & Roofing Co. v. Grubb,* 36 Tenn.App. 641, 260 S.W.2d 191, 196 (1953) ("To hold otherwise would be placing such a strict construction

upon the Statute as to defeat its purposes."); *General Elec. Supp. Co. v. Arlen Realty & Dev. Corp.,* 546 S.W.2d 210, 213 (Tenn.1977) ("the courts have properly construed the lien statutes strictly, almost rigorously, but in our opinion the statutes should not be construed so harshly as to frustrate the legislative purpose in authorizing such liens"). These cases, however, deal not so much with how strictly a particular statute is to be construed, but rather with whether something, *in addition to the statutory requirements,* may be required. *See D.T. McCall & Sons,* 796 S.W.2d at 460, 462 (finding that, because the statute requiring a "sworn statement" did not prescribe the form of such a sworn statement, a notice indicating that an appropriate representative had "sworn to and subscribed" the statement before a notary public satisfied the statute); *Southern Blow Pipe,* 260 S.W.2d at 196 (finding (1) that the statute requiring "a reasonably certain description of the premises" "does not require that the premises be described in the notice in any particular manner"; (2) that statutory language requiring "a sworn statement of the amount due . . . for such work, labor or materials" did not require an itemization of such matters; and (3) that the statute requiring "a sworn statement" was satisfied by an oath made "that the following is a true and correct statement of the amount presently due . . . signed and acknowledged . . . before a [n]otary [p]ublic."); *General Elec. Supp. Co.,* 546 S.W.2d at 213 (in resolving the issue, stating that "[w]e have no disposition to depart from a strict construction of the statutes, but we are reluctant to see engrafted upon them any further or greater technicalities than their terms contain").

---

of Appeals held that "[b]y serving a copy of the lien instead of mailing it, [the lien claimant] exceeded the statutory requirement," and

held that the owner of the property was not entitled to a directed verdict or a j.n.o.v. *Id.*

■ In the instant case, T.C.A. § 66–11–145 requires that the notice be served by registered or certified mail, return receipt requested. That is what the statute expressly provides. *Potter's* cannot be read as requiring something in addition to the statutory requirement; it merely requires compliance with the statute. In addition, we do not agree with Vulcan's argument that the statute was satisfied because Vulcan was successful in notifying GPS of its claim of nonpayment. The statute does not simply require notice; it requires notice in a certain, express way. *Cf. Andrews Distrib. Co. v. Oak Square at Gatlinburg, Inc.,* 757 S.W.2d 663, 667 (Tenn.1988) ("actual knowledge by a property owner that a materialman has filed a notice of lien in the register's office does not meet the notice requirement of T.C.A. § 66–11–115(b)") (*overruled on other grounds by Spence v. Allstate Ins. Co.,* 883 S.W.2d 586, 596 n. 5 (Tenn.1994)).

We note, also, that Vulcan, in its reply brief, brings to our attention T.C.A. § 12–4–205 (1999), which specifically permits materialmen furnishing materials for public projects to deliver their claims by "giv[ing] written notice by return receipt registered mail, or by *personal delivery.*" (Emphasis added). Vulcan asserts that it is illogical to permit a claimant on a public contract to serve notice by hand delivery and require a claimant on a private contract to serve notice only by registered or certified mail. Vulcan concludes from all of this that a private contract claimant should be allowed to serve notice of nonpayment either by the manner specified in T.C.A. § 66–11–145 or by hand delivery. In our judgment, the fact that T.C.A. § 12–4–205 gives a claimant on a public project a choice between registered mail or hand delivery while T.C.A. § 66–11–145 requires registered or certified mail clearly indicates, and supports—rather than undermines—the conclusion that the General Assembly intended to permit a choice in one instance but not in the other. For these reasons, we find that *Potter's* does not construe the statute so strictly as to defeat its purpose.

## C.

Vulcan next argues that the result in *Potter's* ignores well-settled maxims of statutory construction and leads to manifest injustice. More specifically, Vulcan asserts that under such a strict interpretation of the statute, one who complies with the statute but fails to give notice—apparently in a situation where the registered or certified notice is never received—obtains the benefit of the statute whereas one who fails to comply strictly with the statute but succeeds in giving notice is not afforded the benefit of the statute. It contends that such a result is manifestly unjust.

■ It is true that a statute is to "be applied in its present form unless doing so would result in 'manifest injustice.'" *Voss v. Shelter Mut. Ins. Co.,* 958 S.W.2d 342, 345 (Tenn.Ct.App.1997). We also agree with Vulcan that the trial court's—and *Potter's*—interpretation of T.C.A. § 66–11–145 is grounded on the statutory maxim *"expressio unius est exclusio alterius,"* i.e., the expression of one thing excludes the other, *see City of Knoxville v. Brown,* 195 Tenn. 501, 260 S.W.2d 264, 268 (1953) (on petition to rehear), and that the maxim is only to be applied to accomplish legislative intention. *Board of Park Commissioners v. City of Nashville,* 134 Tenn. 612, 185 S.W. 694, 699 (1916). However, we are of the opinion that the legislature's intent in enacting T.C.A. § 66–11–145 was not merely to provide notice, but to provide notice by a certain standardized method, i.e., "by registered or certified mail, return receipt requested." Accordingly, we are not persuaded by Vulcan's argu-

ment that the mere possibility of an illogical result demands a departure from the general rule that lien statutes are to be strictly construed.

For all of the above reasons, we find and hold that *Potter's* is sound in its rationale and correct in its result, and we join the Western Section in holding that hand delivery of a notice of nonpayment does not satisfy the requirements of T.C.A. § 66–11–145.

## VI.

Vulcan argues in the alternative that "it is time to change the long held requirement of strict compliance and adopt a rule permitting substantial compliance with the mechanics' lien statute." It asserts that "the present day mechanics' lien statute is so riddled with overlapping and inconsistent deadlines and requirements that the rule of strict compliance is no longer tenable." It lays out several hypotheticals allegedly illustrating its point. This argument, however, is more appropriately addressed to others. We are required to apply the law as it exists, and the law currently requires strict compliance with the lien statutes. We accordingly affirm the trial court's grant of summary judgment to GPS.

## VII.

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant.